**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

_____

**PRAXAIR DISTRIBUTION, INC.**
**39 Old Ridgebury Road**
**Danbury, Connecticut 06810**

                                      **Plaintiff,**

**-vs.-**

                                                          **Civil Action No. _____**

**DAVID GRUARIN**
**3272 Jerauld Avenue**
**Niagara Falls, New York 14305**

**and**

**HAUN WELDING SUPPLY, INC.**
**5921 Court Street Road**
**Syracuse, New York 13206**

                                      **Defendants.**

_____

## <u>COMPLAINT</u>

Plaintiff, **PRAXAIR DISTRIBUTION, INC.,** by and through its attorneys,

**SCHRÖDER, JOSEPH & ASSOCIATES, LLP**, for its Complaint states as follows:

### <u>NATURE OF THE ACTION</u>

1.      This action arises out of the resignation of David Gruarin from his employment with

Praxair Distribution, Inc. ("PDI" or "Plaintiff"), the hiring of Defendant David Gruarin

("Gruarin") by Defendant Haun Welding Supply, Inc.  ("Haun" or "Defendant") and the

intentional interference by Haun with the contractual commitments of Defendant Gruarin with

PDI, resulting in the unlawful diversion of confidential information of PDI to Haun, as well as

Defendants Gruarin's and Haun's unfair competition with PDI and the breach by Gruarin of his

contractual commitments with respect to the confidential information of PDI, his violation of his common law duty of loyalty to PDI as his employer as well as the breach of his covenants with respect to engaging in competition with PDI.  By reason of this action, PDI seeks damages from Haun and Gruarin well in excess of $150,000 based upon Gruarin's breaches of contract and Haun's unlawful interference with the contract between PDI and Gruarin as well as Defendant Haun's unlawful interference with existing and prospective business relationships, quantum meruit, and unfair competition.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff PDI is a leading supplier of industrial gases, hardware and equipment to welders and other segments of the market that use industrial gases, related hardware and equipment.

3.      Plaintiff PDI is a Delaware corporation with its headquarters office located at 39 Old Ridgebury Road, Danbury, Connecticut 06810.

4.       Defendant Gruarin is a former employee of PDI who is now employed by Defendant Haun and engages in sales activities and conducts business on behalf of Haun.

5.      Defendant Gruarin resides at 3272 Jerauld Avenue in Niagara Falls, New York 14305.

6.      Defendant Gruarin executed the contracts, described in great detail, below at PDI's facility in Western New York where he worked for PDI since 2007.  Defendant Gruarin was hired by PDI in connection with PDI's acquisition—including the purchase of all good will, confidential information and customer lists, among other things—of Gruarin's former employer, Mills Welding in July, 2007.  Copies of the contracts signed by Gruarin—which included a Transfer of Employment Agreement/ Memorandum of Employment ("MEA") and  a Non Compete and Non Solicit Agreement (collectively the "Gruarin Agreement"), both of which were signed on  August 8, 2007 as a term and condition of employment by PDI in a sales job—

are attached as Exhibit A.  Accordingly, the Gruarin Agreement includes provisions protecting PDI's confidential information and restraining Defendant Gruarin from soliciting PDI's customers or competing with PDI.

7.      Defendant Haun is a New York corporation with its headquarters at 5921 Court Street Road in Syracuse, New York 13206-1714 and an office for doing business in Western New York at 300 Woodward Avenue, Tonawanda, New York 14217.

8.      Defendant Haun competes with Plaintiff PDI with respect to a variety of overlapping products and markets, including welding gases, welding wire, welding equipment and other products. Upon information and belief, Haun requires its sales persons to sign non-compete agreements with Haun containing restrictions that are similar, if not identical, to the non-solicit and non-compete restrictions contained in the Gruarin Agreement.

9.      Further, upon information and belief, Defendants Gruarin and Haun have diverted to Haun one or more customers of PDI located in Western New York and therefore have caused harm to PDI in this judicial district by reason of their unfair competition and other wrongful acts and expect or should reasonably expect their acts to have consequences in New York State and derive substantial revenue from interstate or international commerce.

10.     Defendants Haun and Gruarin are subject to personal jurisdiction in this judicial district based upon the facts alleged in paragraphs 4 through 9 above.

11.     Because the parties are citizens of different States and the amount in controversy exceeds $75,000.00, this Court has subject matter jurisdiction over this action based upon diversity pursuant to 28 U.S.C. § 1332 (a) (1).

12.     Venue is proper in this district because a substantial part of the events giving rise to the claims occurred in this judicial district within the meaning of 28 U.S.C. § 1391.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

**A.     Gruarin's Resignation and Events Leading Up to the Resignation**

13.     Plaintiff PDI employed David Gruarin as a territory manager beginning on August 23, 2007—when he was hired incidental to the acquisition of his former employer by PDI—until Sunday February 7, 2016 when he unexpectedly left two voicemails for his supervisor, John Velna. When Mr. Velna returned the call in response to the voicemails, Defendant Gruarin informed Mr. Velna that he would not be coming to work on Monday (February 8, 2016) and instead had accepted a position with PDI's competitor, Defendant Haun.

14.     Prior to notifying PDI of his decision to leave, there had been discussions between Defendant Gruarin and his supervisor, John Velna, about Defendant Haun's offer of employment to Gruarin.  Among other things, Gruarin informed John Velna in words or substance that the hiring manager at Defendant Haun's Western New York office had assured Gruarin that he need not be concerned about his confidentiality, non-solicit and non-compete agreements with PDI because "we can work around that."  Defendant Gruarin further questioned Mr. Velna whether the Gruarin Agreement even existed. Mr. Velna's supervisor, Wayne Feret, also was present during these discussions.

15.     In response, Mr. Velna informed Gruarin the restrictions imposed on him under the Gruarin Agreement were in existence and binding, and that he would be required to adhere to them. It was pointed out to Defendant Gruarin, based on information he provided to Mr. Velna, that the employment being offered by Defendant Haun would result in Gruarin taking a position with a direct competitor of PDI in a position with responsibilities for the very same markets he handled for PDI.

16.     During these discussions, on or about February 4, 2016, Mr. Velna offered Gruarin a retention bonus and increase in his salary if he would commit to stay with PDI.

17.     Once it was confirmed to Gruarin that the Gruarin Agreement existed and after the offers of the retention bonus and increased salary were extended, Gruarin assured Mr. Velna in writing that he would not accept the employment offer from Haun and instead would continue in his position at PDI.

18.     A copy of the written commitment signed by Gruarin on February 4, 2016, explaining that the retention bonus and increased salary were being offered to retain Gruarin because he was a key employee of PDI, is attached hereto as Exhibit B.

19.     Upon information and belief, because Defendant Haun previously hired two other PDI employees approximately six months earlier and went so far as to incorrectly advise Defendant Gruarin as to the enforceability of the Gruarin Agreement, Defendant Haun was well aware of the provisions of the Gruarin Agreement, including its confidentiality, non-compete and non-solicitation provisions.

20.     Defendant Haun, of course, also was well aware that it is a direct competitor of PDI and that it was offering Gruarin a position with responsibilities for the very same markets he handled for PDI and that Gruarin obviously knew of pricing and other confidential information belonging to PDI that would bear on Gruarin's responsibilities in his sales position with Haun.

21.     While Defendant Gruarin returned the car, laptop computer and cell phone that PDI provided to him, it was readily apparent that Gruarin had erased from the cell phone **all** recent telephone calls, emails and text messages he made using the phone, including such communications made while still employed by PDI and subject to a duty of loyalty to PDI.  Both

the cell phone and laptop are being forensically examined to determine if erased files can be recovered and examined.

**B.      The Express Provisions of the Gruarin Agreement and Defendants' Knowledge**

22.      Pursuant to the Gruarin Agreement, Defendant Gruarin agreed in the MEA that any confidential information he accessed or acquired during his employment with PDI would be kept confidential and neither used nor disclosed after the employment ended, except as PDI authorized in writing. Gruarin Agreement, Exhibit A hereto, MEA, para. 1.

23.      The confidential information covered by this obligation includes any non-public information acquired through Gruarin's employment with PDI, including strategic plans, present and prospective sales and marketing policies and activities, technology products, processes, production methods, research and development activities, licensing programs, supplier and customer lists and relationships and other information not known generally to PDI's competitors—whether set out in graphic form or retained in memory and whether developed by Gruarin or not.  Exhibit A hereto, Gruarin Agreement, MEA, para. 6.

24.      Both Haun and Gruarin are well aware that Gruarin has knowledge of PDI confidential information that bears directly on Gruarin's responsibilities in making sales for Haun—a direct competitor of PDI in the very same markets he handled for PDI—and that his specific position as a territory manager in these same markets inevitably will result in the disclosure and use of PDI's confidential information.

25.      Such confidential information that is the subject of Gruarin's Agreement  includes, among other things: marketing and sales information; information with respect to specific customers/accounts; information with respect to present and future price guidelines; proprietary information with respect to the technology, costs, efficiencies, and loading of PDI's air

separation or specialty gas plants with respect to the packaged, merchant and on-site businesses; proprietary information relating to new business opportunities, applications and markets for the sales and marketing of industrial gases or specialty gases; and proprietary contracts with industrial gas and/or specialty gas customers as well as proprietary contracts with vendors.

26.     The Gruarin Agreement also contains, in addition to his confidentiality obligations, an 18-month non-solicitation restriction in the MEA which states as follows:

> For a period of eighteen (18) month following the end of my Corporation employment, I will not, directly or indirectly, alone or with others, solicit: a) any other Corporation employee for employment anywhere, or b) the business of any Corporation customer(s) or referral sources (i) with whom I had contact, or responsibility with respect to products or services while employed by the Corporation, or (ii) to whose Confidential Information I had access or (iii) who purchased products or services with which I was associated while employed by the Corporation.

> Gruarin Agreement, Exhibit A, MEA, para. 7.

27.     Defendant Gruarin also agreed in the Non Compete and Non Solicitation Agreement— which was contemporaneously executed with the MEA—the same non-solicitation restriction described in paragraph 26 above (Exhibit A, Non Compete and Non Solicitation Agreement, para. 3) as well as a non-compete restriction for one year following his termination of his employment which states as follows:

> I agree that during the course of my employment and for a period of one (1) year from the end of my employment with the Company, I will not be an owner, employee, officer, director, agent, consultant or representative of, or be retained or engaged by any person or entity that offers the same or similar products, directly or indirectly, within my area of responsibility during the most recent two (2) years prior to the end of my Employment with the Company.

> Exhibit A, Non Compete and Non Solicitation Agreement, para. 2.

28.     It is standard industry practice in the industry in which PDI and Defendant Haun engage to enter into agreements such as the Gruarin Agreement which contain non-solicitation and non-

compete restrictions and, upon information and belief, Haun asks its employees to sign a non-compete, non-solicit  agreement containing restrictions similar, if not identical, to those contained in the Gruarin Agreement.  Further, as noted above, Defendant Gruarin himself acknowledged his position as a key employee in executing Exhibit B to this Complaint.

29.     As noted above in paragraphs 19 and 24, upon information and belief, when Defendant Haun hired Defendant Gruarin, it knew or should have known that he was bound by confidentiality, non-solicitation and non-compete restrictions such as those contained in the Gruarin Agreement inasmuch as Praxair previously communicated with Haun regarding such non-compete and non-solicit restrictions when Haun previously hired former employees of PDI.

30.     In any event, both Gruarin and Haun were provided with letters and with a copy of the Gruarin Agreement as shown by the letters dated February 12, 2016, attached hereto as Exhibits C and D, respectively.

**C.     Defendants' Conduct To Date in Breach of Gruarin Agreement**

31.     Although PDI's knowledge of Defendants' conduct since Gruarin commenced his employment with Haun is limited, it already has come to PDI's attention that, almost immediately upon commencing his duties with Haun, Defendant Gruarin commenced soliciting PDI customers he serviced while working for PDI.

32.     Further, upon information and belief, by February 15, 2016, Defendant Gruarin—with the assistance at least at times of his manager at Haun—had contacted or visited numerous if not all of the customers he serviced while working for PDI.

33.     Specific examples of customers that were solicited by Defendant Gruarin include the following:

a.      On or about February 9, 2016, a PDI customer located in Niagara Falls, New York, previously serviced by Gruarin, called PDI and stated that Gruarin was at the customer's premises and wanted the customer to consider Defendant Haun for any future orders:

b.      On or about Feb. 8 or 9, 2016, another PDI customer located in Niagara Falls informed PDI that Defendant Gruarin and his manager were at the customer's premises soliciting business for Haun.

c.      On or about February 18, 2016, PDI received a telephone call from a customer in Clarence, New York who stated that Defendant Gruarin had visited and left his business card which provided both Gruarin's and Haun's names and contact information;

d.      A PDI customer located in North Tonawanda, New York informed PDI that Gruarin had visited this customer on or about February 11, 2016, soliciting business on behalf of Defendant Haun;

e.      One of PDI's third party courier services informed PDI that he witnessed Defendant Gruarin on or about February 11, 2016 visiting a PDI customer located in Akron, New York; and

f.      PDI also has reason to believe that Defendant Gruarin has disclosed confidential information to Haun and used such confidential information in efforts to solicit business from yet another customer of PDI because a vendor of PDI has informed PDI that such customer seeks to use certain specific discount pricing with that vendor that previously has been available to such customer only through PDI and neither the customer nor Haun would have the confidential information needed to secure such pricing except through disclosure by Gruarin.

34.     Three days after Defendants had received PDI's letter (Exhibit D) by email—PDI's in-house counsel received an email response on February 15, 2016 from the president of Defendant Haun purporting to assure PDI that Defendant Gruarin—as well as the other two employees hired by Haun approximately six months ago—have been directed to "remain out of contact" with their "prior accounts" and "honor their commitments" to PDI.

35.     Given the widespread contact by Defendant Gruarin with his "prior accounts" BEFORE February 15, 2016, Haun's president's belated action—if reliable at all—does not remedy the situation, particularly since it appears that Gruarin need not make additional contacts since it appears he already has contacted the vast majority of his customers and it hardly matters to Haun if he now starts to "remain out of contact."

36.     In this regard, while again PDI's information is very limited, it knows of at least one customer who currently is considering the transfer of approximately $100,000 of business annually to Haun as well as potential equipment sales that have totaled as much as $350,000 in 2014 alone, and without discovery in this action, there is no way to ascertain how many accounts are in jeopardy due to the breach of the confidentiality, non-solicit and non-compete restrictions of Gruarin and the other two former PDI employees hired by Haun.

37.     Further, not only is PDI's information very limited at this time as to the business that will be lost and damages done due to the knowing and intentional violations of the Gruarin Agreement, Defendants Haun and Gruarin are well aware that—as stated in PDI's letter to Gruarin (see Exhibits C and D hereto)—Gruarin has knowledge of PDI confidential information that bears directly on Gruarin's responsibilities in making sales for Haun and that his specific position as territory manager in these same markets inevitably will result in the disclosure and use of PDI's confidential information.

38.     Finally, Gruarin's actions in erasing all recent calls, emails and text messages from his

PDI cell phone before returning it, demonstrate that there are serious questions as to the potential

breach of his duty of loyalty to PDI before terminating his employment that are currently being

investigated by PDI.

39.     By reason of the foregoing unlawful conduct described in paragraphs 13 to 38 above,

Defendants Haun and Gruarin have wrongfully taken Plaintiff's confidential and proprietary

information and have diverted business from PDI to Haun, entitling Plaintiff to damages of at

least $500,000 and to injunctive relief.

## FIRST CAUSE OF ACTION FOR INTENTIONAL INTERFERENCE WITH CONTRACT AGAINST DEFENDANT HAUN

40.     Plaintiff PDI repeats and realleges each and every allegation contained in paragraphs 1

through 39 above as though fully set forth herein.

41.     Defendant Gruarin entered into the Gruarin Agreement, which includes two contracts

with PDI, pursuant to which PDI authorized Defendant Gruarin to act in the capacity of key

employee—territory manager—which necessarily gave Gruarin access to confidential

information which he acknowledged, by executing the Gruarin Agreement, to be confidential.

Further, when he executed the Gruarin Agreement, Defendant Gruarin agreed and acknowledged

that he could not work for a competitor of PDI without compromising such confidential

information. Gruarin Agreement, Exhibit A, MEA Section 1 and 6.

42.     The Gruarin Agreement contains non-solicitation and non-compete restrictions which

provide that Defendant Gruarin will not, for the period of one (1) year following his resignation

of employment with PDI, work for a competitor of PDI such as Haun or, for a period of eighteen

months, solicit, call upon, negotiate with, sell to or engage in business with any customers of PDI

or disclose the confidential information of PDI.  Gruarin Agreement, Exhibit A, Non Compete and Non Solicit Agreement, paras. 2 and 3.

43.     Defendant Haun had knowledge of the Gruarin Agreement and its confidentiality and restrictive covenants imposed upon Defendant Gruarin based upon, among other things, industry practice and as evidenced by the letter sent to Haun by PDI, Exhibit C to this Complaint.

44.     Defendant Haun knew and intentionally induced Defendant Gruarin to breach his contract with Plaintiff, as demonstrated for example by the facts alleged in paragraphs 14, 24, 25, 28-30, 33 (b) and 34-37 above.

45.     Upon information and belief, Defendant Haun also knew that the former customers of PDI to whom it assigned Gruarin were customers of PDI and that Gruarin had worked with these customers while employed by PDI.

46.     Defendant Haun's actions, in seeking to hire and hiring Defendant Gruarin, were undertaken for the purpose of inducing the breach by Defendant Gruarin of his obligations under the Gruarin Agreement, all of which was done by wrongful means.

47.     Upon information and belief, Defendant Haun also engaged in the conduct described in paragraphs 13 to 39 above to divert both past and future sales to Defendant Haun and/or to obtain access to confidential and proprietary information belonging to PDI.

48.     Plaintiff PDI has suffered damages and losses, which total approximately $150,000 but are continuing to accrue, including, but not limited to, lost future sales from its customers wrongfully diverted by Defendant Haun as a result of its conduct intentionally, wantonly and maliciously causing and inducing the breaches of contract described above.

49.    Plaintiff PDI also has suffered the wrongful and illegal disclosure of its confidential

information by Gruarin to Haun and is continuing to be irreparably harmed by such disclosure

and is entitled to injunctive relief.

50.    Based on the forgoing, Plaintiff PDI seeks monetary damages and injunctive relief based

upon Defendant Haun's intentional interference with contract in an amount to be determined at

trial, including punitive damages and such other and further relief as the Court deems proper and

just.

### SECOND CAUSE OF ACTION INTENTIONAL INTERFERENCE WITH ONGOING AND PROSPECTIVE BUSINESS RELATIONSHIPS AGAINST HAUN

51.    Plaintiff PDI repeats and realleges each and every allegation contained in paragraphs 1

through 50 above as though fully set forth herein.

52.    Defendant Haun knew that its wrongful possession of PDI's confidential and proprietary

information and its assignment of customers of PDI to Defendant Gruarin to whom he had been

assigned while working for PDI would result in the diversion of customer accounts and business

to Haun after its employment of Defendant Gruarin even though these acts necessarily breached

Gruarin's contractual commitments to Plaintiff.

53.    This business that Haun expected to divert to itself by these actions consisted of

customers having long standing relationships with PDI and, but for Defendant Haun's wrongful

conduct in intentionally interfering with PDI's contract with Defendant Gruarin, these

customers' business would not have been diverted to Haun.

54.    Plaintiff PDI has suffered damages and losses, which currently total approximately

$150,000 but are continuing to accrue, including but not limited to lost future sales and

commissions from its customers wrongfully diverted by Defendant Haun as a result of its

conduct in intentionally, wantonly and maliciously causing and inducing the breaches of contract described above.

55.     Plaintiff PDI also has suffered the wrongful and illegal disclosure of its confidential information by Gruarin to Haun and is continuing to be irreparably harmed by such disclosure and is entitled to injunctive relief.

56.     Based on the foregoing, Plaintiff PDI seeks monetary damages based upon Haun's intentional interference with PDI's ongoing and prospective business relationships in an amount to be determined at trial, including punitive damages and such other and further relief as the Court deems proper and just.

### THIRD CAUSE OF ACTION FOR QUANTUM MERUIT AGAINST HAUN

57.     Plaintiff PDI repeats and realleges paragraphs 1 to 56 above as though fully set forth herein.

58.     Alternatively, if the Court should somehow determine that PDI is not entitled to damages under the First and Second Causes of Action, then PDI is entitled under the doctrine of quantum meruit to compensation for the lost revenues resulting from the wrongful diversion of PDI's confidential and proprietary information and PDI's customers to Haun, which it otherwise would have reasonably expected to enjoy, and further is entitled in any event to such damages based on disclosure to Haun and use of confidential information, including the specific confidential information enumerated in paragraph 25 above, by the other two former PDI employees hired by Haun.

59.     Based on the foregoing, Plaintiff PDI is entitled to judgment against Defendant in an amount to be determined at trial, injunctive relief and such other and further relief as the Court deems proper and just.

## FOURTH CAUSE OF ACTION FOR UNFAIR COMPETITION AGAINST BOTH HAUN AND GRUARIN

60.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 59 above as though fully set forth herein.

61.     Defendants' unlawful conduct as alleged herein also constitutes unfair competition under the common law and New York Business Law Section 349 in that such conduct, upon information and belief, has misled and deceived consumers and caused competitive injury to Plaintiff.

62.     Injury to the business and goodwill of Plaintiff has directly resulted from Defendants' unfair competition and the acts done in furtherance thereof.

63.     As a consequence of the foregoing, Plaintiff PDI is entitled to a judgment awarding its actual damages, injunctive relief, attorney's fees and such other and further relief as the Court deems proper and just.

## FIFTH CAUSE OF ACTION AGAINST GRUARIN FOR BREACH OF COVENANT NOT TO DISCLOSE OR USE CONFIDENTIAL INFORMATION

64.     Plaintiff PDI repeats and realleges each and every allegation contained in paragraphs 1 through 63 above as though fully set forth herein.

65.     Upon information and belief, Defendant Gruarin has disclosed confidential and proprietary information to Defendant Haun, including without limitation information relating to pricing and to PDI's vendor relationships and certain specific discount pricing not known to the public as well as information regarding customers of PDI, all in breach of the Gruarin Agreement.

66. Based on the foregoing, Plaintiff PDI has suffered, and will continue to suffer irreparable harm and damage to its business, reputation and goodwill as a result of Gruarin's breach of the confidentiality provisions of the Gruarin Agreement.

67. As a consequence of the foregoing, Plaintiff PDI is entitled to a judgment awarding its actual damages, injunctive relief, and such other and further relief as the Court deems proper and just.

## SIXTH CAUSE OF ACTION AGAINST GRUARIN FOR BREACH OF RESTRICTIVE COVENANTS OF THE AGREEMENT

68. Plaintiff PDI repeats and realleges each and every allegation contained in paragraphs 1 through 67 above as though fully set forth herein.

69. The Gruarin Agreement and its restrictive covenants against solicitation and competition described in paragraphs 22-27 above constitute a binding contract and binding restrictions between Plaintiff PDI and Defendant Gruarin.

70. By soliciting customers of PDI whose accounts Gruarin serviced while employed by PDI, including those customers described in paragraph 33 above, Gruarin has breached his agreement with PDI.

71. Further, upon information and belief, Defendant Gruarin has solicited other customers of PDI and intends to continue soliciting customers of PDI in direct violation of his commitments against solicitation and competition of the Gruarin Agreement.

72. PDI has performed its obligations under the Gruarin Agreement.

73. The foregoing facts establish that Defendant Gruarin has flagrantly breached his obligations under the Gruarin Agreement and continues to do so.

74.     Plaintiff PDI has suffered, and will continue to suffer irreparable harm and damage to its business, reputation and goodwill as of result of Gruarin's breach of the non-solicitation provisions of the Agreement.

75.     As a consequence of the foregoing, Plaintiff PDI is entitled to a judgment awarding its actual damages, injunctive relief, and such other and further relief as the Court deems proper and just.

## SEVENTH CAUSE OF ACTION AGAINST GRUARIN BASED ON FIDUCIARY DUTIES

76.     Plaintiff PDI repeats and realleges each and every allegation contained in Paragraphs 1 through 75 above as though fully set forth herein.

77.     By reason of Defendant Gruarin's breach of his fiduciary duties and his duty of loyalty to PDI, including without limitation his misconduct illustrated, upon information and belief, by his erasure of all text messages, emails and recent telephone calls from his PDI cell phone before returning it, Defendant Gruarin has flagrantly breached his common law duties to Plaintiff.

78.     Plaintiff PDI has suffered, and will continue to suffer irreparable harm and damage to its business, reputation and goodwill as of result of Gruarin's breach of his fiduciary duties and duty of loyalty to Plaintiff PDI.

79.     As a consequence of the foregoing, Plaintiff PDI is entitled to a judgment awarding its actual damages, injunctive relief, and such other and further relief as the Court deems proper and just.

## JURY DEMAND

Plaintiff PDI hereby demands a jury trial on all claims to which it is entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff PDI respectfully requests that it be granted judgment on its Causes of Action as follows:

1.      As to its First and Second Causes of Action, against Defendant Haun, an award of monetary damages based upon Defendant's unlawful conduct in an amount to be determined at trial, not less than $500,000, injunctive relief, together with punitive damages and such other and further relief as the Court deems proper and just;

2.      As to its Third Cause of Action, an award of monetary damages against Defendant Haun, in an amount to be determined at trial, not less than $500,000, injunctive relief and such other and further relief as the Court deems proper and just;

3.      As to its Fourth Cause of Action, against Defendants Haun and Gruarin, an award of its actual damages, not less than $500,000, injunctive relief, attorney's fees and punitive damages and such other and further relief as the Court deems proper and just;

4.      As to its Fifth through Seventh Causes of Action, against Defendant Gruarin, an award of its actual damages, not less than $500,000, injunctive relief, and punitive damages and such other and further relief as the Court deems proper and just; and

5.      As to all Causes of Action, such other and further relief as the Court deems proper and just.

Dated:  February 23, 2016
        Buffalo, New York

Respectfully submitted,

**SCHRÖDER, JOSEPH & ASSOCIATES, LLP**

s/ Linda H. Joseph
_____
Linda H. Joseph
392 Pearl Street
Buffalo, NY  14202
(716) 881-4902 Telephone
(716) 881-4909 Telefax
ljoseph@sjalegal.com

*Attorneys for Plaintiff, Praxair Distribution Inc.*